**No. 25-4475**

# United States Court of Appeals for the Ninth Circuit

JOSEPH SANT, individually and on behalf of all others similarly situated;
MERTON CHUN, individually and on behalf of all others similarly situated;
RONESHA SMITH, individually and on behalf of all others similarly situated;
HEATHER NICASTRO, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees,*

– v. –

ROCKETREACH, LLC,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON IN CASE NO. 2:24-CV-01626-RSM,
RICARDO S. MARTINEZ, DISTRICT JUDGE

## APPELLANT'S OPENING BRIEF

MELISSA A. MURPHY-PETROS
WILSON ELSER MOSKOWITZ EDELMAN &
DICKER, LLP
161 N. Clark Street – Suite 4500
Chicago Illinois 60601
(312) 821-6154
melissa.murphy-petros@wilsonelser.com

*Attorneys for Defendant-Appellant*

Additional Counsel Listed on Signature Block

 (800) 4-APPEAL • (624744)

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 34. Disclosure Statement under FRAP 26.1 and Circuit Rule 26.1-1

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form34instructions.pdf

**9th Cir. Case Number(s)** | 25-4475

Name(s) of party/parties, prospective intervenor(s), or amicus/amici filing this form:

Appellant RocketReach LLC

Under FRAP 26.1 and Circuit Rule 26.1-1, I make the following disclosures:

1. I disclose the following information required by FRAP 26.1(a) and/or Circuit Rule 26.1-1(b) for any nongovernmental corporation, association, joint venture, partnership, limited liability company, or similar entity[1] which is a party, prospective intervenor, or amicus curiae in any proceeding, or which the government identifies as an organizational victim below in section 2 of this form,[2] or which is a debtor as disclosed below in section 3 of this form.

    a. Does the party, prospective intervenor, amicus, victim, or debtor have any parent companies? Parent companies include all companies that control the entity directly or indirectly through intermediaries.
      ○ Yes     ◉ No

    If yes, identify all parent corporations of each entity, including all generations of parent corporations *(attach additional pages as necessary)*:

    b. Is 10% or more of the stock of the party, prospective intervenor, amicus, victim, or debtor owned by a publicly held corporation or other publicly held entity?
      ○ Yes     ◉ No

---

[1] A corporate entity must be identified by its full corporate name as registered with a secretary of state's office and, if its stock is publicly listed, its stock symbol or "ticker."

[2] To the extent it can be obtained through due diligence.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 34**        i        *New 12/01/24*

If yes, identify all such owners for each entity *(attach additional pages as necessary)*:

2. In a criminal case, absent good cause shown, the government must identify here any organizational victim of the alleged criminal activity:

3. In a bankruptcy case, the debtor, the trustee, or, if neither is a party, the appellant must identify here each debtor not named in the court of appeals caption:

4. Are you aware of any judge serving on this Court who participated at any stage of the case, either in district court, administrative proceedings, or in related state court proceedings?
   ○ Yes      ⦿ No

   If yes, list the name of the judge and the case name, case number, and name of court of the related proceedings:

I certify that *(select only one)*:

⦿ this is the first disclosure statement filed in the above-referenced case by the above-identified party/parties, prospective intervenor(s), or amicus/amici, and this disclosure statement complies with FRAP 26.1 and Circuit Rule 26.1-1.

○ the party/parties, prospective intervenor(s), or amicus/amici submitting this supplemental disclosure statement has previously filed a compliant disclosure statement in this case, and this updated disclosure statement discloses changed or additional information.

○ I have reviewed this form, FRAP 26.1, and Circuit Rule 26.1-1 and, to the best of my knowledge, have no information to disclose at this time.

**Signature** | s/ Melissa A. Murphy-Petros | **Date** | 08/04/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 34**                    ii                    *New 12/01/24*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................vi

Introduction ...........................................................................................1

Jurisdictional Statement ........................................................................7

    I.    The district court's jurisdiction ............................................7

        A.    Plaintiffs' CAFA allegations........................................7

        B.    The allegations re: plaintiffs' citizenship...................8

        C.    The allegations re: RocketReach's citizenship .........12

    II.    This Court's jurisdiction................................................16

Statement of the Issue Presented for Review.......................................16

Statement of the Case...........................................................................17

    I.    RocketReach, the Terms of Service, and the arbitration provision ...........................................................................17

        A.    The RocketReach website and database .................17

        B.    Free-trial profile pages............................................17

        C.    Free-preview profile pages ......................................20

        D.    The arbitration provision, opt-out procedure, and class action waiver..................................................20

    II.    The class action complaint ............................................23

    III.    The motion to compel arbitration...................................25

        A.    RocketReach moves to compel arbitration ..............25

        B.    RocketReach's alternative request for discovery .....27

        C.    Plaintiffs' opposition: no evidence showing who created the RocketReach accounts used to draft the complaint...................................................................27

D.    RocketReach's reply: discovery is needed because plaintiffs did not submit evidence supporting their arguments ...................................................................28

E.    The district court denies the motion to compel arbitration and the alternative request for discovery ...............29

Summary of the Argument.....................................................................29

Argument..................................................................................................31

I.    The standard of review ...................................................................31

II.    The legal standard applicable to RocketReach's motion to compel arbitration requires arbitration-related discovery..................31

III.    The district court erroneously inferred that plaintiffs' attorneys created the RocketReach account used to draft the complaint ..............................................................................34

A.    The district court applied the wrong legal standard.................35

B.    There are no factual allegations in the complaint identifying who created the RocketReach account used to draft the complaint ...................................................................35

C.    There is no evidence in the record showing who created the RocketReach account used to draft the complaint...................................................................................36

IV.    Arbitration-related discovery is necessary to determine who created the RocketReach account used to draft the complaint, when, and with what authority from plaintiffs....................................40

A.    This Court's decisions in *Knapke* and *Boshears* are controlling ...............................................................................40

B.    The district court erroneously relied upon the post-remand order in *Boshears* .......................................................44

C.    Arbitration-related discovery is required here ..........................42

1.    Who created the RocketReach account used to draft the complaint?.......................................................47

2.      If plaintiffs' attorneys created the subject
        account, did they create one account or multiple
        accounts?..........................................................................48

3.      If plaintiffs' attorneys created the subject
        account, did they do so before or after plaintiffs
        became their clients? .......................................................49

4.      If plaintiffs' attorneys created the subject
        account, did they do so with plaintiffs' implied
        actual authority?...............................................................50

5.      If plaintiffs' attorneys created the subject
        account, did plaintiffs ratify their attorneys'
        acceptance of the Terms of Service? ............................51

6.      If plaintiffs' attorneys created the subject
        account, did they opt each plaintiff out of the
        arbitration provision?.......................................................53

Conclusion ................................................................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abrego v. Dow Chemical Co.*,
443 F.3d 676 (9th Cir. 2006) ........................................................ 7, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................35

*Baldwin v. Aliso Ridge Behavioral Health, LLC*,
2024 U.S. Dist. LEXIS 203159 (C.D. Cal. Nov. 6, 2024) ...............14

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007)................................................................. 33, 35

*Blue Ridge Insurance Co. v. Stanewich*,
142 F.3d 1145 (9th Cir. 1998) .......................................................12

*Boshears v. PeopleConnect, Inc.*,
2023 U.S. App. LEXIS 20041 (9th Cir. Aug. 3, 2023) ............................ *passim*

*Boshears v. PeopleConnect, Inc.*,
748 F. Supp. 3d 1017 (W.D. Wash. 2024) ................................. *passim*

*Carrera v. Whitepages, Inc.*,
2025 U.S. Dist. LEXIS 109079 (W.D. Wash. June 9, 2025) ...................... 54, 55

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) .........................................................6

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ..........................................................34

*Ehrman v. Cox Communications, Inc.*,
932 F.3d 1223 (9th Cir. 2019) ............................................... 8, 10, 11

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........................................... 5, 16, 31, 33

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
716 F.3d 764 (3d Cir. 2013) ........................................................ 32, 33

*Hansen v. LMB Mortgage Services, Inc.*,
1 F.4th 667 (9th Cir. 2021) ................................................... 33, 34, 35

*Hernandez v. Pure Health Research LLC*,
  2023 U.S. Dist. LEXIS 191909 (S.D. Cal. Oct. 25, 2023) .................................14

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) .......................................................................................32

*Independent Living Resource Center San Francisco v.
Uber Technologies, Inc.*,
  2019 U.S. Dist. LEXIS 127072 (N.D. Cal. July 30, 2019) ...............................39

*Johnson v. Columbia Properties Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006) .......................................................................15

*Johnson v. Kadiant LLC*,
  2024 U.S. Dist. LEXIS 197410 (E.D. Cal. Oct. 30, 2024).......................... 14-15

*Kelly v. Cuomo*,
  2025 U.S. Dist. LEXIS 98343 (D. Nev. May 23, 2025) ...................................54

*Knapke v. PeopleConnect, Inc.*,
  38 F.4th 824 (9th Cir. 2022) ....................................................... *passim*

*Lew v. Moss*,
  797 F.2d 747 (9th Cir. 1986) .........................................................................9

*Manufactured Home Communities, Inc. v. City of San Jose*,
  420 F.3d 1022 (9th Cir. 2005) .....................................................................35

*Mendez v. Global Institute of Stem Cell Therapy and Research, USA*,
  2022 U.S. Dist. LEXIS 135700 (S.D. Cal. July 29, 2022 ................................10

*Moss v. United States Secret Service*,
  572 F.3d 962 (9th Cir. 2009) .......................................................................36

*NewGen, LLC v. Safe Cig, LLC*,
  840 F.3d 606 (9th Cir. 2016) .......................................................................15

*Phillips v. E.I. Dupont De Nemours & Co.
(In re Hanford Nuclear Reservation Litigation)*,
  497 F.3d 1005 (9th Cir. 2007) .....................................................................55

*Rhodes v. Ruiz*,
  2025 U.S. Dist. LEXIS 150544 (E.D. Cal. Aug. 5, 2025).................................36

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) .......................................................................31

*Tompkins v. 23andMe, Inc.*,
　2014 U.S. Dist. LEXIS 88068 (N.D. Cal. June 25, 2014),
　*aff'd,* 840 F.3d 1016 (9th Cir. 2016)................................................37

*U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
　971 F.2d 244 (9th Cir. 1992) ................................ 45, 46, 55

*Zoller v. GCA Advisors, LLC,*
　993 F.3d 1198 (9th Cir. 2021) .............................. 31, 32, 34

## Statutes & Other Authorities:

9 U.S.C. § 1 ........................................................................5

9 U.S.C. § 2 ......................................................................31

9 U.S.C. § 16(a)(1) ...........................................................16

28 U.S.C. § 1332 ................................................................8

28 U.S.C. § 1332(d) ...........................................................7

28 U.S.C. § 1332(d)(1)............................................... 13, 14

28 U.S.C. § 1332(d)(10) ............................................ 13, 15

28 U.S.C. § 1332(d)(2)(a) ........................................... 8, 13

28 U.S.C. § 1653 ..............................................................11

Fed. R. App. P. 4(a)(1)(A) ...............................................16

Federal Rule of Civil Procedure 12(b)(1) ........................25

Federal Rule of Civil Procedure 12(b)(6) ...................... *passim*

Federal Rule of Civil Procedure 56 .............................. *passim*

## **Introduction**

Defendant RocketReach LLC ("RocketReach") owns and operates a website (rocketreach.co[1]) that provides the general public with access to an online database of information about individual professionals. (ER-76, ¶4) RocketReach's database is used by professionals to find other professionals for sales, job recruiting, business development, and marketing purposes. (ER-76, ¶4) The database is comprised of individuals' publicly available professional profile information and operates like many internet search engines. (ER-76, ¶4; ER-83, ¶17) A RocketReach user inputs search criteria into the RocketReach website's search bar and the website displays individual professional profiles based on the search criteria that the user entered. (ER-83, ¶17)

The four individual plaintiffs filed this putative class action lawsuit on October 8, 2024. (ER-118-191) Plaintiffs allege that RocketReach included their publicly available professional profile information in its database without their consent, and by doing so misappropriated their information in violation of the right of publicity statutes of Washington, California, Illinois, and Ohio. (ER-118-191) In addition to their own individual claims, plaintiffs seek the certification of 10 separate classes, injunctive relief, liquidated statutory damages, punitive damages,

---

[1] RocketReach's website ends in ".co," not ".com."

statutory penalties, pre- and post-judgment interest, costs, and attorney fees.[2] (ER-118-191)

In order to access the complete RocketReach database, a user must create an account and agree to RocketReach's Terms of Service. (ER-76-82, ¶¶5-14) The Terms of Service contain an arbitration provision pursuant to which users agree to resolve any disputes with RocketReach via arbitration and expressly waive participation in class action litigation. (ER-92) The arbitration provision also includes an opt-out procedure through which users may opt out of the provision by providing written notice to RocketReach within 30 days of acceptance of the Terms of Service. (ER-92)

The complaint contains allegations describing the professional profile information of plaintiffs and RocketReach founder Andrew Tso as it appears on the RocketReach database. (ER-144-147, ¶¶91-101, 103; ER-150-151, ¶¶117-121; ER-155, ¶¶136-138; ER-160, ¶¶154-156; ER-165, ¶¶173-175) It is undisputed that the information contained within these allegations could only be obtained from the RocketReach database by someone who created a RocketReach account and

---

[2] Although the RocketReach database is used by professionals to find other professionals for business purposes such as job recruiting, plaintiffs allege that when they learned that their publicly available professional profile information was included in the RocketReach database, they suffered "mental anguish" and "became worried, frustrated, and concerned, disturbing his [or her] peace of mind in a meaningful way." (ER-152-153, ¶128; ER-157-158, ¶146; ER-162, ¶164; ER-167-168, ¶183)

accepted the Terms of Service. (ER-85, ¶24) RocketReach accordingly moved to compel arbitration, arguing that these allegations show that either plaintiffs or plaintiffs' attorneys acting on their behalf created an account and accepted the Terms of Service, including the arbitration provision. (ER-96-117) In its motion to compel arbitration, RocketReach alternatively sought discovery regarding whether plaintiffs accepted the Terms of Service or whether their attorneys did so, and, if the latter, whether the attorneys had authority to accept the Terms of Service on plaintiffs' behalf and/or whether plaintiffs ratified their attorneys' acceptance of the Terms of Service. (ER-96-117) Plaintiffs opposed the motion (ER-23-43), and the district court denied it in its entirety. (ER-4-10)

The foregoing case description will be familiar to this Court. In *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022), and *Boshears v. PeopleConnect, Inc.*, 2023 U.S. App. LEXIS 20041 (9th Cir. Aug. 3, 2023), this Court reversed the district court's denial of the defendant's motions to compel arbitration and requests for discovery in virtually identical claims and circumstances. In both *Knapke* and *Boshears*, it was undisputed that plaintiffs' attorneys created the website accounts at issue and in so doing accepted the website's Terms of Service, which included an arbitration provision. In both cases, this Court found that the defendant was entitled to discovery on the issue of whether the attorneys' acceptance of the Terms

of Service was binding upon the plaintiffs before the motion to compel arbitration could be ruled upon.

The key distinction between this case and this Court's decisions in *Knapke* and *Boshears* is the evidence. As noted above, in *Knapke* and *Boshears*, it was undisputed that plaintiffs did not create the website accounts and that their attorneys did. Here, however, plaintiffs have not identified who created the RocketReach account used to draft the complaint. There are no allegations in the complaint and there is no evidence in the record identifying this person. In opposition to RocketReach's motion to compel arbitration, plaintiffs submitted their own declarations attesting that they did not create RocketReach accounts and that they did not give their attorneys authority to bind them to the RocketReach Terms of Service, but that is all. (ER-44, ER-51, ER-58, ER-65) There is no evidence in the record showing that plaintiffs' attorneys created the account or showing who else did so. Despite the missing allegations and evidence, the district court inferred that plaintiffs' attorneys created the account used to draft the complaint and that the attorneys' acceptance of the Terms of Service is not binding upon plaintiffs on the basis of actual authority, implied authority, or ratification. (ER-8-10) In so doing, the district court ignored this Court's decisions in *Knapke* and *Boshears*, and instead relied solely upon the Western District of Washington's post-remand order in *Boshears* wherein that court denied the motion to compel

arbitration *after* the completion of the arbitration-related discovery ordered by this Court.  (ER-7-10)

The Federal Arbitration Act (FAA), 9 U.S.C. §1, *et. seq.*, "requires courts to compel arbitration of claims covered by an enforceable arbitration agreement." *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025). No one can dispute that plaintiffs would be bound to the RocketReach Terms of Service if they had personally created accounts to investigate their claims. The result should not be different if plaintiffs' attorneys or another plaintiffs' agent, such as a paralegal, did this for them. Simply stated, plaintiffs should not be permitted to evade the strong federal policy in favor of arbitration if their agent accepted the Terms of Service on their behalf.

Before RocketReach's motion to compel arbitration can be resolved on the merits, discovery is needed to learn if plaintiffs' attorneys created the account used to draft the complaint and, if not, who did. Discovery is also needed to learn if the same account was used to retrieve information about all four plaintiffs or if multiple accounts were used, as well as all of the circumstances surrounding the account creation so that it can be determined if whoever created the account was acting as plaintiffs' agent such that plaintiffs are bound to the Terms of Service. Finally, discovery is needed to determine if whoever created the account followed

the arbitration provision's opt-out procedure and opted each individual plaintiff out of arbitration.

The district court's inference that plaintiffs' attorneys created the subject account without binding plaintiffs to the Terms of Service has no basis in the allegations of the complaint and no evidentiary basis in the record, and its finding that RocketReach was at fault for not producing evidence on this issue with its pre-discovery motion to compel arbitration has no basis in the realities of civil litigation. This latter point bears emphasis. Plaintiffs' attorneys drafted the complaint, so they must know how the information alleged therein was obtained; that is, they must know who created the RocketReach account used to gain access to the database information described in the complaint, when, and with what authority, among other things. *See, e.g., Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) ("Filing a complaint in federal court is no trifling undertaking. An attorney's signature on a complaint is tantamount to a warranty that the complaint is well-grounded in fact[.]"). Absent discovery, there is no way that RocketReach could know this information and submit it to the district court with its motion to compel arbitration; this is common sense.

For the reasons set forth below, RocketReach requests that this Court vacate the district court's order denying its motion to compel arbitration and remand with

instructions that arbitration-related discovery proceed as in *Knapke*, 38 F.4th 824, and *Boshears*, 2023 U.S. App. LEXIS 20041.

## Jurisdictional Statement

### I.     The district court's jurisdiction.

### A.     Plaintiffs' CAFA allegations.

The complaint asserts diversity jurisdiction under the Class Action Fairness Act (CAFA) pursuant to 28 U.S.C. §1332(d). (ER-124, ¶21) This statutory provision "vests the district court with original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which the parties satisfy, among other requirements, minimal diversity." *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 680 (9th Cir. 2006) (citation omitted). Plaintiffs' jurisdictional allegations are the following:

(a)     RocketReach "is a Wyoming limited liability company with its principal place of business in Bellevue, Washington." (ER-123, ¶16)

(b)     Plaintiff Joseph Sant "is a natural person and is, and at all times relevant hereto was, a resident of University Place, Washington." (ER-123, ¶17)

(c)     Plaintiff Merton Chun "is a natural person and is, and at all times relevant hereto was, a resident of South San Francisco, California." (ER-123, ¶18)

(d)     Plaintiff Ronesha Smith "is a natural person and is, and all times relevant hereto was, a resident of Chicago, Illinois." (ER-123, ¶19)

(e)     Plaintiff Heather Nicastro "is a natural person and is, and at all times relevant hereto was, a resident of Cleveland, Ohio." (ER-123, ¶20)

(f)     "The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because (i) at least one member of each of the putative classes is a citizen of a state different from the Defendant; (ii) the amount in controversy exceeds $5,000,000 with respect to each of the putative classes, exclusive of interest and costs, and (iii) there are at least 100 members of each of the putative classes." (ER-124, ¶21)

## B.    The allegations re: plaintiffs' citizenship.

Minimal diversity under CAFA requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §1332(d)(2)(A). For individuals, "residency is not equivalent to citizenship. A natural person's state of citizenship is determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. A person residing in a given state is not necessarily domiciled there, and thus not necessarily a citizen of that state." *Ehrman v. Cox Communications, Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019) (citation omitted). An individual's domicile for purposes of diversity

jurisdiction is determined as of the time the lawsuit is filed, and considers such factors as "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

For all named plaintiffs, the complaint alleges only their states of residency and not their states of citizenship. Plaintiffs allege that plaintiff Joseph Sant "is a natural person and is, at all times relevant hereto was, a resident of University Place, Washington" (ER-123, ¶17); that plaintiff Merton Chun "is a natural person and is, and at all times relevant hereto was, a resident of South San Francisco, California" (ER-123, ¶18); that plaintiff Ronesha Smith "is a natural person and is, and at all times relevant hereto was, a resident of Chicago, Illinois" (ER-123, ¶19); and that plaintiff Heather Nicastro "is a natural person and is, and at all times relevant hereto was, a resident of Cleveland, Ohio" (ER-123, ¶20).

As the named plaintiffs in this putative class action, plaintiffs are required to plead their states of citizenship. Although plaintiffs also allege that "[a]t least one member of each of the putative classes is a citizen of a state different from the Defendant" (ER-124, ¶21), this allegation alone is not sufficient to plead their own citizenship because it is a prospective allegation about putative class members who

are not yet before the court rather than one that is presently affirmative and distinct as to those parties currently before the court. *See, e.g., Mendez v. Global Institute of Stem Cell Therapy and Research, USA*, 2022 U.S. Dist. LEXIS 135700, *7 (S.D. Cal. July 29, 2022) (named plaintiff must allege her own state of citizenship to show minimal diversity under CAFA; allegation that the putative nationwide class consists of "citizens of the United States" alone is not enough – "a conclusory and prospective allegation that at least one unknown member of a nationwide class will result in minimal diversity is not sufficient to satisfy the pleading requirements for CAFA jurisdiction").

*Ehrman, supra,* illustrates the foregoing point. In *Ehrman*, this Court reversed the district court's order remanding to state court an action that defendant removed to federal court pursuant to CAFA. *Ehrman,* 932 F.3d at 1225. As the removing party, defendant had the burden of pleading minimal diversity, and alleged plaintiff's citizenship in the notice of removal as follows:

> As admitted in the Complaint, [plaintiff] is a resident of California. [Defendant] is informed and believes, and on that basis alleges, that [plaintiff] is a citizen of the state in which he resides, as alleged in the Complaint. [Defendant] is informed and believes, and on that basis alleges, that all purported class members are citizens of California, as alleged in the Complaint.
>
> *Id.* at 1227.

Plaintiff argued – and the district court agreed – that defendant's allegation of his citizenship was insufficient for CAFA removal because it relied on the allegation that he is a "resident" of California. *Id.* at 1227. This Court rejected that argument because defendant also alleged that plaintiff was a "citizen" of California:

> We agree that residency is not equivalent to citizenship. *** Here, however, [defendant] did not merely allege residency. It alleged that [plaintiff] and all putative class members were citizens of California. That [defendant's] notice of removal mentioned [plaintiff's] residency is immaterial to our analysis. [Defendant] did not have to explain why it believed [plaintiff] or the putative class members were citizens of California. As we explained above, a defendant's allegations of citizenship may be based solely on information and belief. Because [defendant] provided a short and plain statement alleging that [plaintiff] and the putative class members were citizens of California, its jurisdictional allegations were sufficient[.]
>
> *Id.* at 1227 (citation omitted).

Pursuant to 28 U.S.C. §1653, "[d]efective allegations of citizenship may be amended, upon terms, in the trial or appellate courts." In its motion for amendment of the jurisdictional allegations filed contemporaneously with this brief, RocketReach requests that, pursuant to §1653, plaintiffs be directed to file affidavits identifying their states of citizenship at the time the complaint was filed.[3]

---

[3] RocketReach understands that plaintiffs' alleged states of residency may be their states of citizenship, but this is not clear. For example, Washington plaintiff Sant alleges that he is "a resident of University Place, Washington" who "formerly lived in New York." (ER-148, ¶¶107, 111) However, all of the professional profile

RocketReach also requests that upon plaintiffs' filing of these affidavits, the complaint be deemed amended, *nunc pro tunc*, for purposes of sufficiently alleging plaintiffs' states of citizenship. *See, Blue Ridge Insurance Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998) (accepting such an affidavit pursuant to §1653 in these circumstances as this pleading defect "may be cured by amendment and nothing is to be gained by sending the case back for that purpose") (citation omitted).

### C. The allegations re: RocketReach's citizenship.

As stated above, plaintiffs allege that RocketReach "is a Wyoming limited liability company with its principal place of business in Bellevue, Washington." (ER-123, ¶16)

---

information which he alleges to be included in the RocketReach database without his consent pertains to professional work in New York, New York. (ER-148-149, ¶¶108, 112) Moreover, the screenshot of Sant's RocketReach free-preview profile page in the complaint is incomplete. (ER-148-149, ¶112) (Free-preview profile pages are described *infra*.) Sant's free-preview profile page accessible via Google contains the "Joseph Sant Summary" that is omitted from the complaint and states that Sant is "based in New York, NY." *See,* rocketreach.co/joseph-sant-email_44664370, last accessed on September 8, 2025. Similarly, plaintiff Smith alleges that she is a "resident" of Chicago, Illinois, but she signed her declaration in opposition to RocketReach's motion to compel arbitration in Las Vegas, Nevada. (ER-59) The screenshot of Smith's free-preview profile page in the complaint is also incomplete. (ER-158-159, ¶150) Smith's free-preview profile page accessible via Google contains the "Ronesha Smith Summary" that is omitted from the complaint and states that Smith is "based in Las Vegas, NV." *See,* rocketreach.co/ronesha-smith-email_73009049, last accessed on September 8, 2025.

- 12 -

RocketReach is a limited liability company (LLC) and not a corporation. CAFA states at 28 U.S.C. §1332(d)(1) that "[f]or purposes of this subsection …, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."

In *Abrego, supra*, this Court, in affirming the remand of a "mass action" that defendant sought to remove under CAFA, stated in dicta that §1332(d)(10) "departs from the rule that frequently destroys diversity jurisdiction, that a *limited partnership's* or *unincorporated association's* citizenship for diversity purposes can be determined only by reference to all of the entity's members." *Abrego,* 443 F.3d at 684 (citations omitted) (emphasis added). However, RocketReach has not been able to identify a controlling decision from this Court on the specific issue of whether an LLC is an "unincorporated association" under §1332(d)(10). Multiple district courts within this Circuit have observed similarly in the context of alleging the citizenship of an LLC under §1332(d)(2)(A):

> Traditionally, a limited liability company ("LLC") is considered a citizen of every state where its members are citizens. However, there is an exception to this rule when an LLC is a party to CAFA case. CAFA states "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. §1332(d)(10). Since an LLC is not a corporation, an LLC may be considered an "unincorporated association" under CAFA.

*The Court is unaware of a controlling Ninth Circuit case on this issue,* but both the Fourth and Seventh Circuits have weighed in. *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698 (4th Cir. 2010); *City of East St. Louis v. Netflix, Inc.*, 83 F.4th 1066 (7th Cir. 2023). *** Additionally, in a concurrence from Judge Kleinfeld of the Ninth Circuit, he reasoned a limited partnership would be an unincorporated association under CAFA, which suggests an LLC should be treated similarly. *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026 (9th Cir. 2009).

Finally, district courts in California have addressed this issue. The Northern District held an LLC's citizenship is based on its principal place of business and laws of incorporation. *See, Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021) (relying on Judge Kleinfeld's concurrence). Additionally, a court in this District reached the same conclusion. *Ramierez v. Carefusion Res., LLC*, 2019 U.S. Dist. LEXIS 112995 (S.D. Cal. July 5, 2019) (citing 28 U.S.C. §1332(d)(1); *see also, Abrego*, 443 F.3d at 684. This Court, applying the text of 28 U.S.C. §1332(d)(1) and following the guidance of the above sister courts, also adopts the rule that in a CAFA case, where a party is an LLC, the LLC's citizenship shall be the State under whose laws it is organized and the State where it has its principal place of business.

*Hernandez v. Pure Health Research LLC*, 2023 U.S. Dist. LEXIS 191909, *6-7 (S.D. Cal. Oct. 25, 2023) (emphasis added).

*See also, Baldwin v. Aliso Ridge Behavioral Health, LLC*, 2024 U.S. Dist. LEXIS 203159, *7 (C.D. Cal. Nov. 6, 2024) (observing that this Court has "not directly addressed" the issue of whether an LLC is an "unincorporated association" under §1332(d)(10)); *Johnson v. Kadiant LLC*, 2024 U.S. Dist. LEXIS 197410, *6-7

- 14 -

(E.D. Cal. Oct. 30, 2024) ("The Ninth Circuit has not explicitly addressed whether an LLC is an 'unincorporated association' under CAFA…").

If this Court determines that an LLC is an "unincorporated association" under §1332(d)(10), then plaintiffs have sufficiently pled RocketReach's citizenship. If, however, this Court determines that the traditional diversity rule regarding the citizenship of an LLC applies instead, then plaintiffs' allegation of RocketReach's citizenship is defective.

For purposes of diversity jurisdiction, the traditional rule is that an LLC is a citizen of every state of which its owners/members are citizens. *See, e.g., Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("an LLC is a citizen of every state of which its owners/members are citizens."). When pleading diversity jurisdiction with respect to an LLC, therefore, the citizenship of all members must be pled. *See, e.g., NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016). Here, the complaint does not contain any allegations regarding the identity or citizenship of RocketReach's owners/members. However, RocketReach in its Rule 7.1 disclosure stated that its owners/members and their states of citizenship are the following (ER-72-73):

      a.      "Andrew Tso, a citizen" of Florida."

      b.      "Amit Shanbhag, a citizen of Washington."

      c.      "Brighton Park Capital, a citizen of Connecticut."

    d.    "Phillip Hadley, a citizen of Connecticut."

    e.    "Daversa Partners, Inc., a Florida corporation with its principal place of business in Connecticut."

In its motion for amendment of the jurisdictional allegations, RocketReach requests that if this Court finds that the traditional diversity rule regarding the citizenship of an LLC applies here, then the complaint be deemed amended, *nunc pro tunc*, pursuant to §1653 for purposes of sufficiently alleging the identities and states of citizenship of its owners/members as set forth in RocketReach's Rule 7.1 disclosure. (ER-72-73)

## II.    This Court's jurisdiction.

This Court has jurisdiction pursuant to the FAA. *See*, 9 U.S.C. §16(a)(1). *Godun*, 135 F.4th at 708 ("Because the district court denied JustAnswer's motion to compel arbitration, we have jurisdiction under 9 U.S.C. §16(a)(1)."). The district court entered its order denying RocketReach's motion to compel arbitration on July 7, 2025. (ER-4-10) RocketReach filed its notice of appeal on July 18, 2025, within 30 days of the July 7, 2025 order as required by Fed. R. App. P. 4(a)(1)(A). (ER-192)

## <u>Statement of the Issue Presented for Review</u>

Whether the district court erred in denying RocketReach's motion to compel arbitration and alternative request for arbitration-related discovery.

## Statement of the Case

**I.     RocketReach, the Terms of Service, and the arbitration provision.**

### A.     The RocketReach website and database.

RocketReach owns and operates a website that provides the general public with access to an online database of information about individual professionals. (ER-76, ¶4) RocketReach's database is intended to be used by professionals to find other professionals for sales, job recruiting, business development, and marketing purposes. (ER-76, ¶4) The database is comprised of publicly available information and its search function operates like many internet search engines. (ER-76, ¶4; ER-83, ¶17) A RocketReach user inputs search criteria into the RocketReach website's search bar and the website displays individual professional profiles based on the search criteria that the user entered. (ER-83, ¶17)

### B.     Free-trial profile pages.

In addition to various subscription plans (ER-133-134, ¶¶59-60), RocketReach offers a free trial which gives users limited access to the database and five free searches per month. (ER-76, ¶5)

To sign up for a free trial, a user must create a RocketReach account. (ER-76, ¶5) This is done by first clicking the "Try It For Free" button on the RocketReach home page, pictured below:



(ER-76-77, ¶8) After clicking this button, the next page prompts the user to create an account by providing an email address:



(ER-77-78, ¶10) When a user clicks the "Continue with Email" button on the page above, the following page appears prompting the user to create an account by providing a full name and business email address and creating a RocketReach password:



(ER-78-79, ¶11)

After the account is created, the user may search the RocketReach database for individual professionals in the manner described *supra*. (ER-83, ¶17) A screenshot of an exemplar free-trial profile page – that of RocketReach founder Andrew Tso – is set out in the complaint. (ER-145, ¶96)

### C. Free-preview profile pages.

A user can also locate some individuals' profiles on RocketReach by using a search engine such as Google; these are free-preview profiles. (ER-80, ¶12) The user does not need to create a RocketReach account to locate profiles in this way. (ER-80, ¶12) However, if the user wishes to access full contact information for the profiled person, the user must create a RocketReach account (either a free trial or paid subscription) through the steps described above. (ER-80-83, ¶¶13-15)

### D. The arbitration provision, opt-out procedure, and class action waiver.

As set out in the "Create your account" screenshots set out above, a user who creates a RocketReach account agrees to RocketReach's Terms of Services; this is specifically stated on each pop-up page throughout the account creation process. (ER-77-82, ¶¶10-11, 13-14) Moreover, the words "Terms of Service" appear in blue hyperlink text; when the user clicks on this text, the full Terms of Service appear for the user's review. (ER-83, ¶19; ER-87-95)

The Terms of Service advise the user on the first page that agreement to the arbitration provision is required to create a RocketReach account:

**PLEASE READ THE FOLLOWING TERMS
CAREFULLY:**

**BY REGISTERING FOR THE SERVICES, OR BY
DOWNLOADING, INSTALLING, OR
OTHERWISE ACCESSING OR USING THE
SERVICES**, YOU AGREE THAT YOU HAVE READ
AND UNDERSTOOD, AND, AS A CONDITION TO
YOUR USE OF THE SERVICE, YOU AGREE TO BE
BOUND BY, THE TERMS, INCLUDING
ROCKETREACH'S PRIVACY POLICY.

**ARBITRATION NOTICE.** You agree that disputes
arising under these Terms will be resolved by binding,
individual arbitration as further described in Section 10,
and BY ACCEPTING THESE TERMS, YOU AND
ROCKETREACH ARE EACH WAIVING THE RIGHT
TO A TRIAL BY JURY OR TO PARTICIPATE IN
ANY CLASS ACTION OR REPRESENTATIVE
PROCEEDING. YOU AGREE TO GIVE UP YOUR
RIGHT TO GO TO COURT to assert or defend your
rights under this contract (except for matters that may be
taken to small claims court). Your rights will be
determined by a NEUTRAL ARBITRATOR and NOT a
judge or jury.

**If you do not agree to all the terms and conditions of
this Agreement, you may not access or use the
Services or Lookup Information.**

(ER-87; bold and capitalization in original)

The arbitration provision states first that RocketReach and RocketReach

account holders agree to arbitrate every dispute between them with limited

exceptions:

> Generally. In the interest of resolving disputes between
> you and RocketReach in the most expedient and cost
> effective manner, and except as expressly described
> herein, you and RocketReach agree that every dispute

- 21 -

arising in connection with these Terms will be resolved by binding arbitration. Arbitration is less formal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, may allow for more limited discovery than in court, and can be subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of these Terms. YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THESE TERMS, YOU AND ROCKETREACH ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

Exceptions. Despite the provisions of this Section, nothing in these Terms will be deemed to waive, preclude, or otherwise limit the right of either party to: (a) bring an individual action in small claims court; (b) pursue an enforcement action through the applicable federal, state, or local agency if that action is available; (c) seek injunctive relief in a court of law in aid of arbitration; or (d) to file suit in a court of law to address an intellectual property infringement claim.

(ER-92; capitalization in original)

The arbitration provision then sets out the following opt-out procedure:

Opt-Out. If you do not wish to resolve disputes by binding arbitration, you may opt out of the provisions of this Section within 30 days after the date that you agree to these Terms by sending a letter to RocketReach, LLC, Attention: Legal Department – Arbitration Opt-Out, 1100 Bellevue Way NE, Ste. 8A, #91, Bellevue WA 98004 that specifies: your full legal name, the email address associated with your account on the Services, and a statement that you wish to opt out of arbitration ("Opt-

Out Notice"). Once RocketReach receives your Opt-Out Notice, this section will be void and any action arising out of these Terms will be resolved as set forth in Section 14(ii) ("Governing Law"). The remaining provisions of these Terms will not be affected by your Opt-Out Notice.

(ER-92)

The arbitration provision states that any arbitration is subject to the

Consumer Arbitration Rules of the American Arbitration Association (E-92), and

includes the following class action waiver:

> No Class Actions. YOU AND ROCKETREACH AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Further, unless both you and RocketReach agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.
>
> (ER-93; capitalization in original)

## II.    The class action complaint.

Plaintiffs filed their class action complaint on October 8, 2024, alleging that

the inclusion of their publicly available professional profile information in the

RocketReach database without their consent violates the right of publicity statutes

of Washington, California, Illinois, and Ohio. (ER-118-191) Plaintiffs seek

- 23 -

certification of 10 classes in total[4] (ER-168-171, ¶¶184-199), and allege that "the members of each of the classes number in the millions." (ER-172, ¶204) Plaintiffs request an order requiring RocketReach to obtain prior consent from class members before including their publicly available professional profiles in the RocketReach database and seek statutory liquidated damages[5] to be paid to each individual plaintiff and each class member, punitive damages, statutory penalties, pre- and post-judgment interest, costs, and attorney fees. (ER-177, ¶222; ER-180-181, ¶236; ER-184, ¶248; ER-186-187, ¶259; ER-189, ¶271; ER-190)

---

[4] The 10 putative classes are the following: (1) a nationwide free-preview class consisting of all four individual plaintiffs and everyone in the country who has a free-preview profile (ER-168, ¶184); (2) a nationwide free-trial class, consisting of all four individual plaintiffs and everyone in the country who has a free-trial profile (ER-168, ¶185); (3) a Washington free-preview class consisting of plaintiff Sant and everyone in Washington who has a free-preview profile (ER-168-169, ¶187); (4) a Washington free-trial class consisting of plaintiff Sant and everyone in Washington who has a free-trial profile (ER-169, ¶188); (5) a California free-preview class consisting of plaintiff Chun and everyone in California who has a free-preview profile (ER-169, ¶190); (6) a California free-trial class consisting of plaintiff Chun and everyone in California who has a free-trial profile (ER-169-170, ¶191); (7) an Illinois free-preview class consisting of plaintiff Smith and everyone in Illinois who has a free-preview profile (ER-170, ¶193); (8) an Illinois free-trial class consisting of plaintiff Smith and everyone in Illinois who has a free-trial profile (ER-170, ¶194); (9) an Ohio free-preview class consisting of plaintiff Nicastro and everyone in Ohio who has a free-preview profile (ER-170-171, ¶196); and (10) an Ohio free-trial class consisting of plaintiff Nicastro and everyone in Ohio who has a free-trial profile (ER-171, ¶197).

[5] Plaintiffs allege that the statutory liquidated damages available per person under each statute are the following: Washington - $1,500 (ER-177, ¶222); California - $750 (ER-184, ¶248); Illinois - $1,000 (ER-186-187, ¶259); and Ohio - $2,500 (ER-189, ¶271).

### III. The motion to compel arbitration.

#### A. RocketReach moves to compel arbitration.

RocketReach moved to compel arbitration on the basis of the arbitration provision set out in the Terms of Service and described *supra*.[6] (ER-96-117) Although the complaint does not allege that the individual plaintiffs created RocketReach accounts, RocketReach argued that plaintiffs must have done so based upon the following allegations in the complaint, all of which contain information that can only be obtained by creating a RocketReach account (ER-111):

- the allegations describing what a free-trial profile is, including a screenshot of Andrew Tso's free-trial profile, and explaining how to create a RocketReach account (ER-144-147, ¶¶91-101);

- the allegation that free-trial profiles of each individual plaintiff are in the RocketReach database (ER-147, ¶103);

- the allegations describing plaintiff Sant's free-trial profile (ER-150-151, ¶¶117-121);

- the allegations describing plaintiff Chun's free-trial profile (ER-155, ¶¶136-138);

- the allegations describing plaintiff Smith's free-trial profile (ER-160, ¶¶154-156); and

---

[6] The record reflects that RocketReach has not yet answered the complaint. In addition to its motion to compel arbitration, RocketReach also filed alternative motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) and to strike the class allegations. (ER-198, ECF Nos. 18-19) These motions were denied on July 9, 2025. (ER-199, ECF No. 36)

- the allegations describing plaintiff Nicastro's free-trial profile (ER-165, ¶¶ 173-175).

RocketReach supported its motion with the declaration of its chief executive officer, Scott Kim. (ER-75-85) In his declaration, Kim explained what RocketReach is and how it works, how a RocketReach account is created, and how free-preview and free-trial profiles are accessed and what they contain. (ER-76-83, ¶¶4-15, 17) Kim also described the Terms of Service and arbitration provision, appended a true and correct copy of the Terms of Service to his declaration, and explained how the Terms of Service must be accepted in order to create a RocketReach account. (ER-83-85, ¶¶16, 18-23; ER-86-95) Finally, Kim declared that the information contained in the complaint at the paragraphs listed above could not have been obtained without a RocketReach account:

> I have reviewed the Complaint filed by the Plaintiffs in this matter. The description of the free-trial profile pages related to the Plaintiffs could only have been accessed after the user created a RocketReach account. As part of creating an account, the user would be required to agree to the RocketReach TOS [Terms of Service] as described above.
>
> (ER-85, ¶24)

RocketReach argued that plaintiffs agreed to the Terms of Service – and thus the arbitration provision – when they created RocketReach accounts. (ER-106-111) RocketReach argued alternatively that if plaintiffs' attorneys created RocketReach accounts to draft the complaint, then they did so on plaintiffs' behalf and as

plaintiffs' agents such that plaintiffs are bound by the Terms of Service and the arbitration provision. (ER-111-112)

**B.      RocketReach's alternative request for discovery.**

In its motion to compel arbitration, RocketReach argued alternatively that the district court should order discovery on the issue of who created the RocketReach account used to draft the complaint, when, and with what authority to determine if plaintiffs are bound to the Terms of Service before ruling on the motion to compel arbitration. (ER-111-112)

**C.      Plaintiffs' opposition: no evidence showing who created the RocketReach accounts used to draft the complaint.**

In opposition to the motion to compel arbitration, plaintiffs did not argue that the arbitration provision does not encompass their claims, that the arbitration provision is invalid for any reason, or that RocketReach waived arbitration. (ER-23-43) Instead, plaintiffs argued that they are not bound by the Terms of Service and arbitration provision because they did not create RocketReach accounts and "their attorneys' purported consent to the Terms of Service" (E-35) is not binding upon them for various reasons. (ER-30-40) Plaintiffs argued further that the district court should deny RocketReach's alternative request for discovery because "no arbitration agreement binding upon plaintiffs exists." (ER-41)

Plaintiffs submitted their own declarations with their opposition to RocketReach's motion. (ER-44-71) In these declarations, which are identical,

plaintiffs stated the date on which they retained counsel in this action; that they never created RocketReach accounts or used RocketReach in any way; that they never agreed to the Terms of Service; and that they first learned of the Terms of Service through communications from their counsel regarding the motion to compel arbitration. (ER-44-45, ER-51-52, ER-58-59, ER-65-66) Plaintiffs further declared that they never provided counsel with the authority to bind them to the Terms of Service, and that they "expressly repudiate" any contract that could bind them to the Terms of the Service "(e.g., as the result of agency principles deriving from an attorney-client relationship)." (ER-44-45, ER-51-52, ER-58-59, ER-65-66) Finally, plaintiffs attached their individual attorney representation agreements to their respective declarations. (ER-46-50, ER-53-57, ER-60-64, ER-67-71) The record reflects that plaintiffs did not submit any other evidence in opposition to the motion to compel arbitration, including evidence showing who created the RocketReach account used to draft the complaint, when, and with what authority.

### D. RocketReach's reply: discovery is needed because plaintiffs did not submit evidence supporting their arguments.

In its reply in further support of the motion to compel arbitration, RocketReach reiterated its request for discovery on the issue of whether plaintiffs are bound to the Terms of Service. (ER-11-22) RocketReach argued, *inter alia*, that plaintiffs did not submit evidence supporting their arguments regarding their attorneys' "purported consent to the Terms of Service." (E-18-E19)

- 28 -

### E.     The district court denies the motion to compel arbitration and the alternative request for discovery.

The district court denied RocketReach's motion to compel arbitration on July 7, 2025. (ER-4-10) The district court inferred that plaintiffs' attorneys created the RocketReach account used to draft the complaint, and found that plaintiffs did not give their attorneys implied or actual authority to accept the RocketReach Terms of Service on plaintiffs' behalf, that plaintiffs did not ratify their attorneys' acceptance of the Terms of Service, and that RocketReach did not submit any evidence showing otherwise. (ER-7-10) Finally, the district court denied RocketReach's request for arbitration-related discovery in one sentence: "The Court will deny Defendant's Request for discovery and this Motion." (ER-10)

This appeal ensued. (ER-192-193)

### Summary of the Argument

The Introduction is incorporated by reference as if fully set forth herein. Additionally, RocketReach's request for arbitration-related discovery before its motion to compel arbitration was ruled upon should have been granted for three reasons.

First, this Court in *Knapke*, 38 F.4th 824, established that where the parties dispute the formation of an agreement to arbitrate, a motion to compel arbitration is to be decided under the Rule 56 summary judgment standard, which means that the court "is not authorized to dispose of a motion to compel arbitration" until after

arbitration-related discovery has been completed and "material factual disputes have been resolved." *Knapke*, 38 F.4th at 831 (citations omitted). Here, although plaintiffs and RocketReach dispute that they agreed to arbitrate plaintiffs' claims, the district court did not apply the Rule 56 standard and erroneously applied the Rule 12(b)(6) motion to dismiss standard instead.

Second, applying the Rule 12(b)(6) standard, the district court inferred that plaintiffs' attorneys created the RocketReach account used to draft the complaint and, based upon that inference, concluded that plaintiffs' attorneys did not bind plaintiffs to the RocketReach Terms of Service and arbitration provision in doing so. The district court's inference that plaintiffs' attorneys created the subject RocketReach account was erroneous because it has no support in the record. There is no factual allegation in the complaint identifying who created the RocketReach account used to draft the complaint or from which it can reasonably be inferred that plaintiffs' attorneys did so, and plaintiffs did not submit any evidence in any form identifying who created the Rocket Reach account used to draft the complaint when they opposed the motion to compel arbitration.

And third, even if the district court's inference that plaintiffs' attorneys created the RocketReach account used to draft the complaint was supported by the record, the district court's reasons for denying RocketReach's request for arbitration-related discovery do not withstand scrutiny and are unsupported by this

Court's decisions in *Knapke*, 38 F.4th 824, and *Boshears*, 2023 U.S. App. LEXIS 20041.

**Argument**

## I.     The standard of review.

This Court reviews the district court's "order denying a motion to compel arbitration *de novo*, questions of arbitrability with a healthy regard for the federal policy favoring arbitration, and any underlying factual findings for clear error." *Knapke,* 38 F.4th at 830 (citation and internal quotations omitted). The district court's denial of a request for arbitration-related discovery is reviewed for an abuse of discretion. *See, e.g., Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999).

## II.    The legal standard applicable to RocketReach's motion to compel arbitration requires arbitration-related discovery.

The FAA "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Knapke*, 38 F.4th at 830 (citation omitted). The FAA "declares a liberal federal policy favoring arbitration," *Zoller v. GCA Advisors, LLC,* 993 F.3d 1198, 1201 (9th Cir. 2021) (citation omitted), and states that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. In other words, the FAA "requires courts to compel the arbitration of claims covered by an enforceable arbitration agreement." *Godun,* 135 F.4th at 708.

The question of whether "the parties have submitted a particular dispute to arbitration, i.e. the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Knapke*, 38 F.4th at 831 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (italics in original). "Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties, and (2) whether the agreement covers the dispute." *Zoller*, 993 F.3d at 1201; *see also, Knapke*, 38 F.4th at 831 (citing *Zoller*). The district court is to analyze these issues under the Rule 12(b)(6) motion to dismiss standard or the Rule 56 summary judgment standard, depending on the circumstances. *See, e.g., Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771-774 (3d Cir. 2013).

When it is apparent from the face of the complaint that the plaintiff's claim is subject to an arbitration agreement – that is, it is apparent from the face of the complaint that the parties agreed to arbitrate and the claim is covered by the arbitration agreement – the defendant's motion to compel arbitration is to be resolved under the Rule 12(b)(6) standard. *Guidotti*, 716 F.3d at 776. In this circumstance, the motion to compel arbitration is akin to a motion to dismiss for failure to state a claim upon which relief can be granted, and the question to be answered is whether the allegations of the complaint, assessed under the *Iqbal-*

*Twombly* standard – "raise a reasonable expectation that discovery will reveal" the arbitration provision to be unenforceable. *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 556 (2007); *see also, Guidotti*, 716 F.3d at 773-774.

By contrast, the Rule 56 standard applies where the parties dispute the formation of an agreement to arbitrate. *Knapke*, 38 F.4th at 831; *Guidotti*, 716 F.3d at 774. In this circumstance, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure. "The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortgage Services, Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (citation omitted). Accordingly, in this scenario a court is not authorized to dispose of a motion to compel arbitration until after material factual disputes have been resolved." *Knapke*, 38 F.4th at 831 (citations omitted); *see also, Hansen,* 1 F.4th at 670. When the Rule 56 standard applies, the parties are entitled to discovery on the existence of an agreement to arbitrate before the court rules upon the motion to compel arbitration. *Knapke*, 38 F.4th at 831.

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Godun*, 135 F.4th at 708 (citations omitted); *see also*, *Knapke*, 38 F.4th at 831. Because

- 33 -

federal courts sitting in diversity apply the substantive law of the forum state, Washington law applies to the question of arbitrability here, and the record establishes that the parties do not dispute this. *See, e.g., Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001) ("In a diversity case, federal courts apply the substantive law of the forum in which the court is located.").

In this case, plaintiffs have never disputed that the arbitration provision in the RocketReach Terms of Service covers their claims. (ER-23-43) There is thus no question regarding "whether the agreement covers the dispute." *Zoller,* 993 F.3d at 1201. Instead, the question here is whether plaintiffs agreed to arbitrate with RocketReach. *Knapke*, 38 F.4th at 831; *Zoller*, 993 F.3d at 1201. Because the parties disagree on whether they agreed to arbitrate, the making of an arbitration agreement is in issue and the Rule 56 summary judgment standard – with its requirement of arbitration-related discovery – applies to RocketReach's motion to compel arbitration. *Knapke*, 38 F.4th at 831; *Hansen*, 1 F.4th at 670. Indeed, plaintiffs admitted this below. (ER-28)

## III.    The district court erroneously inferred that plaintiffs' attorneys created the RocketReach account used to draft the complaint.

In denying RocketReach's motion to compel arbitration and request for arbitration-related discovery, the district court inferred that plaintiffs' attorneys created the RocketReach account used to draft the complaint and from that inference concluded that the attorneys' acceptance of the Terms and Conditions

- 34 -

was not binding on plaintiffs. (ER-8-10) This inference was erroneous for three reasons.

### A. The district court applied the wrong legal standard.

As discussed *supra* in Argument II, the Rule 56 standard applies to RocketReach's motion to compel arbitration because plaintiffs and RocketReach disagree on whether they formed an agreement to arbitrate plaintiffs' claims. *Knapke*, 38 F.4th at 831; *Hansen*, 1 F.4th at 670. The district court did not apply the Rule 56 standard and instead resolved RocketReach's motion under the Rule 12(b)(6) standard, citing and applying *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (ER-4, ER-10) Applying the Rule 12(b)(6) standard – which, under *Iqbal* and *Twombly*, requires that all reasonable inferences be drawn in plaintiffs' favor – the district court inferred that plaintiffs' attorneys created the RocketReach account used to draft the complaint and then concluded that the attorneys' inferred acceptance of the Terms of Service was not binding on plaintiffs. (ER-8-10) This reliance upon the wrong legal standard was an abuse of discretion. *See, e.g., Manufactured Home Communities, Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005) ("Applying the incorrect legal standard is an abuse of discretion.").

### B. There are no factual allegations in the complaint identifying who created the RocketReach account used to draft the complaint.

There are no factual allegations in the complaint identifying who created the RocketReach account used to draft the complaint or from which it could

reasonably be inferred that plaintiffs' attorneys did so. (ER-118-191) Even if the Rule 12(b)(6) standard applies here (which it does not), there is nothing in the complaint that supports the district court's inference that plaintiffs' attorneys created the subject account. *See, e.g., Moss v. United States Secret Service*, 572 F.3d 962, 970-972 (9th Cir. 2009) (under *Iqbal-Twombly*, motion to dismiss on qualified immunity should have been granted where there were no factual allegations in the complaint from which it could reasonably be inferred that Secret Service agents relocated plaintiffs' protest against then-President George W. Bush solely because of plaintiffs' anti-Bush message).

### C. There is no evidence in the record showing who created the RocketReach account used to draft the complaint.

There is no evidence in the record showing who created the RocketReach account used to draft the complaint, so the district court's inference that plaintiffs' attorneys did so has no factual predicate. *See, e.g., Rhodes v. Ruiz*, 2025 U.S. Dist. LEXIS 150544, *5 (E.D. Cal. Aug. 5, 2025) (under the Rule 56 standard, "inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn") (citation omitted).

In its motion to compel arbitration, RocketReach asserted that plaintiffs are bound to the Terms of Service because the evidence establishes that either they or their attorneys acting as their agents created a RocketReach account and used that

account to draft the complaint. As discussed *supra* in the Statement of the Case, the complaint's allegations describing the free-trial profiles of each plaintiff and RocketReach owner Andrew Tso contain information that can only be obtained by creating a RocketReach account and agreeing to the Terms of Service. (ER-111; ER-144-147, ¶¶91-101; ER-147, ¶103; ER-150-151, ¶¶117-121; ER-155, ¶¶136-138; ER-160, ¶¶154-156; ER-165, ¶¶ 173-175) These allegations constitute evidence that someone involved in this litigation created a RocketReach account and accepted the Terms of Service, including the arbitration provision. *See, e.g., Tompkins v. 23andMe, Inc.*, 2014 U.S. Dist. LEXIS 88068, *26-27 (N.D. Cal. June 25, 2014) (Koh, J.), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (a complaint's allegations of information that is only available on portions of website requiring assent to Terms of Service is "sufficient evidence" of assent to arbitration provision contained in the Terms of Service by the one who so accessed the website).

Additional evidence on this point is the declaration of RocketReach CEO Scott Kim, which RocketReach submitted with its motion to compel arbitration. (ER-75-85) In his declaration, Kim explained what RocketReach is and how it works, how a RocketReach account is created, and how free-preview and free-trial profiles are accessed and what they contain. (ER-76-83, ¶¶4-15, 17) Kim also described the Terms of Service and arbitration provision, appended a true and correct copy of the Terms of Service to his declaration, and explained how the

- 37 -

Terms of Service must be accepted in order to create a RocketReach account. (ER-83-85, ¶¶16, 18-23; ER-86-95) Finally, Kim attested that he reviewed the complaint and the allegations describing the free-trial profiles contain information that could only have been accessed after the user created a RocketReach account and accepted the Terms of Service. (ER-85, ¶24)

In opposition to RocketReach's motion, plaintiffs did not dispute that the complaint contains information pulled from the RocketReach database which could only have been obtained by one who created a RocketReach account and accepted the Terms of Service. (ER-23-43) Instead, plaintiffs argued that they did not create RocketReach accounts and that they did not give their attorneys authority to bind them to the RocketReach Terms of Service. (ER-23-43) Plaintiffs supported these arguments with their identical declarations in which they attested that they never created RocketReach accounts, never agreed to the RocketReach Terms of Service, and first learned of the Terms of Service from their attorneys after RocketReach filed its motion to compel arbitration. (ER-44-45, ¶¶3, 5, 7; ER-51-52, ¶¶3, 5, 7; ER-58-59, ¶¶3, 5, 7; ER-65-66, ¶¶3, 5, 7) Plaintiffs also attested that they "never provided" their "attorneys authority to bind [them] to the Terms of Service." (ER-44, ¶6; ER-51, ¶6; ER-58, ¶6; ER-66, ¶6) Finally, plaintiffs attached to their declarations the individual class action representation agreements they entered with their attorneys. (ER-46-50; ER-53-57; ER-60-64; ER-67-71)

What plaintiffs *did not* submit with their opposition to the motion to compel was a declaration from one of their attorneys – or anyone else[7] for that matter – identifying who created the RocketReach account used to draft the complaint; when the account was created, under what circumstances, and with whose authority; and whether an opt-out notice was submitted within the time specified in the arbitration provision and on whose behalf. Plaintiffs' declarations establish only that they did not create RocketReach accounts and that they did not give their attorneys authority to bind them to the RocketReach Terms of the Service, but that is all. Plaintiffs did not submit any evidence in any form showing that their attorneys created a RocketReach account in the first place, and, indeed, their opposition memorandum repeatedly refers only to their attorneys' "purported" consent to the Terms of Service. (ER-30, ER-35, ER-36, ER-39)

\* \* \*

Without allegations in the complaint and evidence in the record showing who created the RocketReach account used to draft the complaint, the district court's inference that plaintiffs' attorneys did so was impermissibly speculative.

---

[7] *See, e.g., Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, 2019 U.S. Dist. LEXIS 127072, \*8-11 (N.D. Cal. July 30, 2019) (motion to compel arbitration granted where paralegal for plaintiffs' attorneys created Uber account; accepted Terms of Service containing arbitration provision; and used the account to secure information supporting plaintiffs' claims of discrimination against disabled riders, which information was included in plaintiffs' complaint).

- 39 -

While this inference may have been a logical guess under the circumstances, a logical guess is not the same thing as a factual allegation in the complaint or evidence in the record. This point is critical because the district court's impermissible inference that plaintiffs' attorneys created the RocketReach account used to draft the complaint is the basis for its findings that plaintiffs are not bound by their attorneys' inferred acceptance of the Terms of Service and arbitration provision.

## IV. Arbitration-related discovery is necessary to determine who created the RocketReach account used to draft the complaint, when, and with what authority from plaintiffs.

### A. This Court's decisions in *Knapke* and *Boshears* are controlling.

This Court's decisions in *Knapke*, 38 F.4th 824, and *Boshears*, 2023 U.S. App. LEXIS 20041, establish that arbitration-related discovery is necessary before RocketReach's motion to compel arbitration can be resolved on the merits.

*Knapke* and *Boshears* were both brought against PeopleConnect, Inc., the owner and operator of the website "Classmates.com" ("Classmates"). *Knapke*, 38 F.4th at 829; *Boshears v. PeopleConnect, Inc.*, 748 F. Supp. 3d 1017, 1020 (W.D. Wash. 2024)[8]. The Classmates database is an online collection of over 450,000 high school yearbooks from across the country. *Knapke*, 38 F.4th at 829; *Boshears*, 748 F. Supp. 3d at 1020. Classmates invites website visitors to create a free

---

[8] RocketReach cites the district court's post-remand order in *Boshears* for the facts of the case because the facts are not set out in this Court's memorandum decision.

account and buy a subscription service that allows them to search the yearbooks' contents to locate individual former classmates and connect with them via private message. *Knapke*, 38 F.4th at 829; *Boshears*, 748 F. Supp. 3d at 1020. To create an account, the user must accept Classmates' Terms of Service, which include an arbitration provision with an opt-out procedure and class action waiver. *Knapke*, 38 F.4th at 829; *Boshears*, 748 F. Supp. 3d at 1020. Although any user may access some of the Classmates database, a user must have an account to access most of it. *Knapke*, 38 F.4th at 829; *Boshears*, 748 F. Supp. 3d at 1020. In *Knapke,* plaintiff alleged that the inclusion of her name and likeness in the Classmates database without her consent violated the Ohio right of publicity statute. *Knapke*, 38 F.4th at 829. The plaintiff in *Boshears* made the same allegation with respect to Indiana's right of publicity statute. *Boshears,* 748 F. Supp. 3d at 1022.

In both cases, the allegations of the complaint contained information that could only be accessed on the Classmates database by one who created a Classmates account and accepted the Terms of Service. *Knapke*, 38 F.4th at 829; *Boshears*, 748 F. Supp. 3d at 1021-1022. In both cases, it was undisputed that plaintiffs' attorneys created the accounts used to draft the complaints. *Knapke*, 38 F.4th at 829; *Boshears*, 748 F. Supp. 3d at 1021. In both cases, PeopleConnect moved to compel arbitration on the ground that the attorneys' acceptance of the Terms of Service was binding on the plaintiffs. *Knapke*, 38 F.4th at 829-830;

*Boshears*, 748 F. Supp. 3d at 1022. In both cases, the district court denied PeopleConnect's motion to compel and its alternative request for arbitration-related discovery on the ground that PeopleConnect did not produce evidence showing that the attorneys were acting as plaintiffs' agents when they created the Classmates accounts. *Knapke* at 830; *Boshears*, 748 F. Supp. 3d at 1022. Finally, in both cases, this Court reversed and remanded with instructions for arbitration-related discovery before PeopleConnect's motions to compel arbitration could be ruled upon. *Knapke,* 38 F.4th at 832-836; *Boshears*, 2023 U.S. App. LEXIS, *2-5.

In *Knapke*, this Court first set out the applicable principles of Washington law regarding the attorney-client relationship as a principal-agent relationship, when an arbitration agreement may bind a non-signatory, and the legal theories of express authority, implied authority, and ratification pursuant to which a principal may be bound to the contracts of the agent. *Knapke*, 38 F.4th at 832-836.  This Court then held that discovery was necessary to determine if plaintiff was bound to the Classmates Terms of Service accepted by her attorney under any of the foregoing legal theories, noting the following specific evidentiary gaps in the record before it:

- when the attorney-client relationship between plaintiff and her attorney began – at the time plaintiff signed the retainer agreement or earlier – and whether the attorney-client relationship began before or after the attorney accepted the Classmates Terms of Service (*Id.* at 832-833);

- the scope of the agreement between plaintiff and her attorney and the attorney's corresponding authority to act on plaintiff's behalf, particularly with respect to plaintiff's argument that she retained her attorney to investigate and file a lawsuit and not to enter into the Classmates Terms of Service (*Id.* at 833-834);

- whether plaintiff and her attorney ever discussed the attorney's creation of a Classmates account (*Id.* at 834);

- whether plaintiff knew that her attorney agreed to the Classmates Terms of Service before filing the complaint, and, if so, when (*Id.* at 835);

- if plaintiff knew that her attorney agreed to the Terms of the Service, whether she renounced this agreement in a timely manner and whether she benefitted from this agreement in some way (*Id.* at 835); and

- whether plaintiff's attorney effectively opted plaintiff out of the arbitration provision through the procedures set forth therein (*Id.* at 836).

In *Boshears*, this Court held that "[f]or the same reasons articulated in [*Knapke*], we conclude that the district court abused its discretion in denying PeopleConnect's motion to compel arbitration without first allowing for arbitration-related discovery. Rather than restate the reasoning of *Knapke* here, we direct the district court to apply its holding on remand." *Boshears*, 2023 U.S. App. LEXIS 20041, *2 (citations omitted). This Court then identified the following topics upon which discovery was needed to determine if plaintiff was bound by his attorney's acceptance of the Classmates Terms of Service before PeopleConnect's motion to compel arbitration could be addressed on the merits:

- 43 -

- whether plaintiff's attorney was representing plaintiff at the time he created a Classmates account (*Id.* at *2);

- if plaintiff's counsel was representing him at the time he created a Classmates account, whether plaintiff knew of the account creation, whether plaintiff ratified or repudiated the account creation, and whether plaintiff received a benefit from the account (*Id.* at *2);

- whether plaintiff's counsel created a Classmates account solely for his own personal use (*Id.* at *2);

- whether plaintiff's counsel effectively opted plaintiff out of the arbitration provision through the procedures set forth therein (*Id.* at *2-3); and

- whether plaintiff's counsel acted with plaintiff's implied authority when he created the Classmates account and accepted the Terms of Service (*Id.* at *3).

This Court concluded that, "[i]f PeopleConnect can prove that [plaintiff's attorney] became [plaintiff's] agent before [the attorney] created one or more of the member accounts, and if it can prove that [plaintiff] knowingly accepted a benefit from, failed to repudiate, or exhibited conduct adopting that or those member accounts, [plaintiff] may be bound by [his attorney's] agreement to arbitrate." *Id.* at *3 (citations omitted).

## B.    The district court erroneously relied upon the post-remand order in *Boshears*.

The district court did not consider this Court's decisions in *Knapke* and *Boshears* in its ruling on RocketReach's motion to compel arbitration. (E-4-10) Instead, at plaintiffs' urging, the district court relied solely upon the post-remand

- 44 -

order in *Boshears*, 748 F. Supp. 3d 1017, which it found to be "compelling in this case." (ER-7) This reliance was misplaced.

In *Boshears*, arbitration-related discovery was conducted after remand from this Court, and this discovery included written discovery, document production, attorney declarations, and plaintiff's deposition. *Boshears*, 748 F. Supp. 3d at 1023-1027.[9] Following the completion of discovery, the district court took up PeopleConnect's renewed motion to compel arbitration and denied it on the primary ground that plaintiff's counsel opted plaintiff out of the arbitration provision by following the opt-out procedures set forth in the provision. *Boshears,* 748 F. Supp. 3d at 1024-1025. The arbitration provision in the PeopleConnect Terms of Service contained two opt-out procedures: one allowing users to opt out of arbitration on their own behalf and one allowing an agent to opt out on behalf of a principal. *Id.* at 1024-1025. The post-remand discovery showed that plaintiff's attorney correctly followed the latter procedure and opted plaintiff out of arbitration when he (the attorney) created the Classmates account used to draft the complaint. *Id.* at 1025-1026. Based upon plaintiff's deposition testimony, the district court alternatively found that plaintiff did not give his attorney actual or

---

[9] *See also, Boshears v. PeopleConnect, Inc.*, W.D. Wash. No. 2:21-cv-01222-MJP, ECF Nos. 32, 32-1, 86, 87, 89, 89-1, and 89-2 (discovery materials adduced post-remand); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (this Court may take judicial notice of proceedings in other courts).

implied authority to bind him to the Classmates Terms of Service, *id.* at 1026-1028, and did not ratify his attorney's acceptance of the Classmates Terms of Service. *Id.* at 1028-1029.[10]

Plaintiffs argued below (ER-33-35) – and the district court here agreed (ER-7) – that the post-remand order in *Boshears* should be followed in resolving RocketReach's motion to compel arbitration because of "the similarities between this case and *Boshears*." (ER-35) RocketReach respectfully submits that there are no similarities between this case in its current posture and *Boshears* post-remand. As plaintiffs observed, the *Boshears* court post-remand denied PeopleConnect's renewed motion to compel arbitration "with the full benefit of two Ninth Circuit opinions establishing clear standards for how to approach this issue." (ER-35) Plaintiffs and the district court ignored, however, that the *Boshears* court post-remand also denied the renewed motion to compel to arbitration "with the full benefit" of complete arbitration-related discovery as ordered by this Court. The distinction between the procedural posture of *Boshears* post-remand and this case cannot be overlooked. There is simply no comparison to the denial of a motion to compel arbitration before and after the parties engage in arbitration-related

---

[10] This Court may take judicial notice of the fact that there were no post-remand proceedings in *Knapke*. *Robinson Rancheria Citizens Council*, 971 F.2d at 248. After remand, plaintiff's attorneys learned that plaintiff had passed away; plaintiff's husband was substituted in and he then voluntarily dismissed the case. *Knapke v. PeopleConnect, Inc.*, W.D. Wash. No. 2:21-cv-00262-MJP, ECF No. 64 (joint status report).

discovery when the issue posed by the motion to compel is whether the parties agreed to arbitrate their dispute.

### C.  Arbitration-related discovery is required here.

Pursuant to this Court's decisions in *Knapke* and *Boshears*, if plaintiffs' attorneys created the RocketReach account used to draft the complaint and accepted the Terms of Service before the attorney-client relationship was established, and if the attorneys' agreement to the Terms of Service falls within the scope of the agency authority provided by plaintiffs, then plaintiffs are bound to the Terms of Service and this case must be arbitrated. *Knapke*, 38 F.4th at 832-836; *Boshears*, 2023 U.S. App. LEXIS 20041, *3. RocketReach is thus entitled to arbitration-related discovery on these very issues.

### 1.  Who created the RocketReach account used to draft the complaint?

As discussed throughout, it is undisputed that the complaint contains information from the RocketReach database that can only be accessed by one who created a RocketReach account and accepted the Terms of Service. There is no allegation in the complaint identifying who created this account, and plaintiffs did not put forward evidence on this – such as declarations of their counsel – in opposing RocketReach's motion to compel arbitration. Plaintiffs argued below that RocketReach did not present evidence showing that plaintiffs "became clients of their attorneys *before* their attorneys purportedly agreed to the Terms of Service"

(ER-36; italics in original), but how can RocketReach show that plaintiffs'

attorneys created the subject account before plaintiffs became their clients if it is

unknown that plaintiffs' attorneys created the account in the first place? Moreover,

"with the full benefit of two Ninth Circuit opinions establishing clear standards for

how to approach this issue" (E-35), in plaintiffs' words, why did plaintiffs'

attorneys not submit declarations on this issue? Surely this is information that

plaintiffs' attorneys, as the drafters of the complaint, must know.

### 2. If plaintiffs' attorneys created the subject account, did they create one account or multiple accounts?

In *Boshears*, the plaintiff's attorney created multiple Classmates accounts

(including at least one under an alias), so discovery was necessary to determine

how many accounts he created, when he created them, and when and how he used

them. *Boshears*, 748 F. Supp. 3d at 1021-1023.  Here, there are four individual

plaintiffs, all from different states and with no apparent pre-existing relationship

among themselves. Discovery is necessary to determine if one account was created

and used to access RocketReach database information about each plaintiff or

whether multiple accounts were created and used so that the circumstances

surrounding the creation and use of each account can be analyzed with respect to

whether each of the plaintiffs is bound to the RocketReach Terms of Service.

### 3. If plaintiffs' attorneys created the subject account, did they do so before or after plaintiffs became their clients?

If plaintiffs' attorneys created the subject account (or accounts), it is unknown if they did so before or after each individual plaintiff became their client. Although plaintiffs submitted their signed retainer agreements in opposition to RocketReach's motion to compel, this Court in *Knapke* noted that, under Washington law, an attorney-client relationship may begin before the retainer agreement is signed and that this is a fact-specific inquiry. *Knapke*, 38 F.4th at 832, n. 3.

Again, plaintiffs here are four individuals from four separate states with no apparent pre-existing relationships among themselves. Moreover, each plaintiff signed his or her retainer agreement on a different date: Washington plaintiff Sant signed on August 21, 2024 (ER-50), California plaintiff Chun signed on August 19, 2024 (ER-57), Illinois plaintiff Smith signed on September 5, 2024 (ER-64), and Ohio plaintiff Nicastro signed on August 26, 2024 (ER-71). Because each individual plaintiff's relationship with plaintiffs' attorneys could have begun before these dates – and because each plaintiff's relationship with plaintiffs' attorneys could have begun on a different date – discovery is necessary to learn how and when each individual attorney-client relationship incepted. If plaintiffs' attorneys created the subject RocketReach account (or accounts), discovery is also necessary to learn when they did so and under what names. Indeed, all of this

- 49 -

information was discovered in *Boshears* post-remand and discussed in the district court's post-remand order. *Boshears*, 748 F. Supp. 3d at 1021-1023.

**4.    If plaintiffs' attorneys created the subject account, did they do so with plaintiffs' implied actual authority?**

In their declarations in opposition to the motion to compel arbitration, plaintiffs attested that they did not give their attorneys express actual authority to bind them to the RocketReach Terms of Service. (ER-44, ER-51, ER-58, ER-65) The record is silent, however, with respect to whether plaintiffs' attorneys had implied actual authority to do so with respect to each individual plaintiff. Under Washington law, "implied authority is actual authority, circumstantially proved, which the principal is deemed to have actually intended the agent to possess. And actual authority to perform certain services on a principal's behalf results in implied authority to perform the usual and necessary acts associated with the authorized services." *Knapke*, 38 F.4th at 834 (Washington citations omitted).

Plaintiffs argued below – and the district court agreed – that their retainer agreements limit their attorneys' authority to representing them in this class action litigation and nothing else. (ER-38) This argument, however, was based on the retainer agreements alone; it is not supported by the plaintiffs' declarations and plaintiffs' attorneys did not submit their own declarations. Under nearly identical circumstances on this point, this Court in *Knapke* found that discovery was needed

to determine if plaintiff's attorney had implied actual authority to accept the Terms of Service on her behalf:

> At some point, Knapke retained Reilly and his law firm to file suit against PeopleConnect based on Classmates.com's alleged unauthorized use of her image. But the scope of both their agreement and Reilly's corresponding authority are unclear on this record. Knapke now argues that she retained Reilly's law firm not "to enter into the PeopleConnect Terms of Service," but only "to investigate and file a lawsuit." But Knapke filed no declaration, and Reilly's declaration does not discuss this issue. Discovery could reveal, among other things, both the contours of Knapke's agreement with Reilly's law firm and the limits, if any, on Reilly's authority to act on Knapke's behalf.

*Knapke*, 38 F.4th at 834.

### 5. If plaintiffs' attorneys created the subject account, did plaintiffs ratify their attorneys' acceptance of the Terms of Service?

Plaintiffs argued below – and the district court agreed (ER-10) – that they did not ratify their attorneys' "purported" acceptance of the RocketReach Terms of Service. (ER-39-40) In their declarations in opposition to the motion to compel arbitration, plaintiffs attested that they "first learned about the Terms of Service … through communications from my attorneys regarding" the motion to compel arbitration. (ER-45, ER-52, ER-59, ER-66) Plaintiffs also attested that they "expressly repudiate" any contract incorporating the Terms of Service that is

- 51 -

"construed as binding upon me (e.g., as the result of agency principles deriving from an attorney-client relationship)." (ER-45, ER-52, ER-59, ER-66)

Under Washington law, "ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him. Principals can ratify an agent's agreement in three ways: (1) by receiving, accepting, and retaining benefits from the contract; (2) by remaining silent, acquiescing, or failing to repudiate the contract; or (3) by otherwise exhibiting conduct demonstrating adoption and recognition of the contract." *Knapke*, 38 F.4th at 835 (Washington citations omitted).

Here, each plaintiff submitted an identical declaration despite that they live in four different states and have no apparent pre-existing relationship with each other. Discovery is needed to test each individual plaintiff's attestations on this issue. The record as it stands does not establish whether each individual plaintiff knew when the complaint was filed that plaintiffs' attorneys' "purportedly" accepted the RocketReach Terms of Service and whether this acceptance was done on each individual plaintiff's behalf. The record also does not establish what each individual plaintiff understands "repudiation" of a contract to be and how each individual plaintiff may have acted on that. Again, *Knapke* is instructive on the discovery needed to assess ratification:

- 52 -

> On this record, it is also unclear if Knapke is bound
> because she ratified Reilly's agreement to the Terms of
> Service, even if she would not otherwise be bound. …
> The record does not establish whether Knapke knew that
> Reilly had agreed to the Terms of Service on her behalf.
> There is no evidence that Knapke knew, when she filed
> her complaint, that Reilly had even agreed to the Terms
> of Service. … [T]he record does not establish the facts
> necessary to decide this issue, including what Knapke
> knew and when she knew it. … Thus, PeopleConnect is
> also entitled to discovery on ratification.

*Knapke*, 38 F.4th at 835 (citation omitted).

### 6. If plaintiffs' attorneys created the subject account, did they opt each plaintiff out of the arbitration provision?

Finally, the arbitration provision here contains an opt-out provision pursuant to which anyone who does not wish to resolve disputes with RocketReach through arbitration may opt out of arbitration by sending a written opt-out notice to RocketReach within 30 days after the date on which the Terms of Service were accepted. (ER-92) This notice must contain the user's full legal name, the email address associated with the user's RocketReach account, and a statement that the user wishes to opt out of arbitration. (ER-92)

In *Knapke* and *Boshears*, this Court held that an attorney could create a Classmates account on behalf of a client and then opt the client out of arbitration by following the opt-out procedure in the arbitration provision on the client's behalf: "to avoid the arbitration requirement of the Terms of Service, an attorney should create an account on behalf of a client and then opt out of arbitration on that

- 53 -

client's behalf." *Boshears*, 2023 U.S. App. LEXIS 20041, *3; *Knapke*, 38 F.4th at 836. Here, discovery is necessary to determine if plaintiffs' attorneys opted each individual plaintiff out of the Terms of Service arbitration provision pursuant to the procedure set forth therein.

* * *

In sum, this Court's decisions in *Knapke* and *Boshears* require that arbitration-related discovery be conducted before RocketReach's motion to compel arbitration can be resolved on the merits. Plaintiffs were correct in stating below that these two decisions "establish[] clear standards for how to approach this issue." (ER-35) However, those standards apply as much to plaintiffs as they do to RocketReach. While *Knapke* and *Boshears* describe the types of evidence that RocketReach must produce to compel arbitration here, these decisions also recognize that "[a] party cannot produce what it does not have." *Kelly v. Cuomo*, 2025 U.S. Dist. LEXIS 98343, *13 (D. Nev. May 23, 2025) (citation omitted). For this reason, these decisions accordingly require that arbitration-related discovery of facts which are solely in the possession of plaintiffs and their attorneys proceed before RocketReach's motion to compel arbitration can be ruled upon.

One final point.

Plaintiffs' attorneys here also represent the plaintiffs in *Carrera v. Whitepages, Inc.*, 2025 U.S. Dist. LEXIS 109079 (W.D. Wash. June 9, 2025). In

*Carrera*, defendant Whitepages operates multiple "people search" websites that include individuals' names, email addresses, phone numbers, and the like. *Id.* at *1-2. The three individual plaintiffs alleged that their information was included on these websites without their consent in violation of different states' right of publicity statutes. *Id.* at *2. Whitepages moved to compel arbitration on the ground that the complaint contained information which could only been obtained by one who created a Whitepages account and accepted its Terms of Service, which include an arbitration provision. *Id.* at *6-10. The district court denied the motion. *Id.* at *10. Pertinent here, the district court also denied Whitepages' request for arbitration-related discovery on the basis of waiver because Whitepages made this request for the first time in its reply papers. *Id.* at *3-6.

Whitepages has appealed this order and its appeal is currently before this Court. *Carrera v. Whitepages, Inc.*, No. 25-4219.[11] One week before the due date of Whitepages' opening brief, plaintiffs moved for summary affirmance pursuant to Circuit Rule 3-6(a)(2). *Carrera*, No. 25-4219, 9th Cir. ECF No. 10. Despite that this Court has the discretion to overlook any waiver of a claim caused by a party's failure to properly raise it in the district court[12], plaintiffs argue that Whitepages'

---

[11] This Court may take judicial notice of the appellate proceedings before it in *Carrera*. *See, Robinson Rancheria Citizens Council*, 971 F.2d at 248.

[12] *Phillips v. E.I. Dupont De Nemours & Co. (In re Hanford Nuclear Reservation Litigation)*, 497 F.3d 1005, 1025 (9th Cir. 2007).

appeal is frivolous because Whitepages waived its request for arbitration-related discovery below. *Carrera*, No. 25-4219, 9th Cir. ECF No. 10.

Whitepages opposed this motion, arguing in pertinent part that arbitration-related discovery is required under these circumstances pursuant to *Knapke*. *Id.*, 9th Cir. ECF No. 11 at pp. 3-6. In their motion reply, plaintiffs' attorneys assert that *Knapke* requires arbitration-related discovery in the circumstances presented only where that discovery is first requested in the opening motion to compel arbitration as opposed to the motion reply. *Id.*, 9th Cir. ECF No. 13 at pp. 4-7. Here, of course, this is precisely what happened. RocketReach requested arbitration-related discovery in its opening motion to compel arbitration, so arbitration-related discovery is required under *Knapke* for the reasons discussed *supra*. (ER-111-112) In light of their position before this Court in *Carrera*, plaintiffs' attorneys cannot now credibly assert otherwise.[13]

---

[13] Plaintiffs' motion for summary affirmance in *Carrera* remains pending as of this writing.

## **Conclusion**

For the foregoing reasons and upon the authorities cited, RocketReach, LLC respectfully requests that this Court vacate the district court's order of July 7, 2025 and remand with instructions that arbitration-related discovery be allowed before RocketReach's motion to compel arbitration is ruled upon. RocketReach also requests all such other relief to which this Court finds it entitled.

Respectfully submitted,

*/s/ Melissa A. Murphy-Petros*

By:_____

MELISSA A. MURPHY-PETROS
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
161 N. Clark Street – Suite 4500
Chicago, Illinois 60601
(312) 704-0550

*Of Counsel:*

PATRICK G. LYNCH
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
520 Pike Street – Suite 2350
Seattle, Washington 98101
(206) 709-5900

- 57 -

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | Sant, et al. v. RocketReach, LLC

I am the attorney or self-represented party.

**This brief contains** | 12,826 | **words,** including | 200 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [                    ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Melissa A. Murphy-Petros | **Date** | 9/12/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                          *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 25-4475

The undersigned attorney or self-represented party states the following:

( • ) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | /s/ Melissa A. Murphy-Petros    **Date** | Sep 12, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**      *New 12/01/2018*